**KAZEROUNI LAW GROUP, APC**
Ryan L. McBride (SBN: 297557)
ryan@kazlg.com
245 Fischer Ave., Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**THE CARDOZA LAW CORPORATION**
Michael F. Cardoza (SBN: 194065)
mike.cardoza@cardozalawcorp.com
Lauren B. Veggian (SBN: 309929)
lauren.veggian@cardozalawcorp.com
548 Market St #80594
San Francisco, California 94104
Telephone: (415) 488-8041
Facsimile: (415) 651-9700

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Clayton Franco, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>Car Wash Partners, Inc. d/b/a Mister Car Wash,<br><br>　　　　Defendant. | Case No. 2:22-at-00309<br><br>**COMPLAINT FOR VIOLATIONS OF**<br><br>**1) THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. §227 et seq.; and**<br><br>**2) THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT**<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT** 　　　　　　　　　　　　　1　　　　　　　　　　**KAZEROUNI LAW GROUP**
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**245 FISCHER AVE., SUITE D1**
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**COSTA MESA, CA 92626**

# INTRODUCTION

1. Plaintiff Clayton Franco ("Plaintiff") brings this class action against Defendant Car Wash Partners, Inc. d/b/a Mister Car Wash ("Defendant") to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 and the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788 et seq ("Rosenthal Act").

2. The United States Congress has recognized the need to protect the privacy of consumers and reduce public safety risks associated with receiving unwanted telemarketer and debt-collector calls. Receiving calls after a consumer has revoked consent undermines a consumer's right to privacy. As such, Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, to protect consumers from abusive debt-collector practices.

3. The California legislature has determined that the banking and credit system and grantors of credit to consumers are dependent upon the collection of just and owing debts and that unfair or deceptive collection practices undermine the public confidence that is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers. The Legislature has further determined that there is a need to ensure that debt collectors exercise this responsibility with fairness, honesty, and due regard for the debtor's rights and that debt collectors must be prohibited from engaging in unfair or deceptive acts or practices.[1]

# NATURE OF THE ACTION

4. This is a putative class action pursuant to the TCPA and the Rosenthal Act.

5. Defendant operates a car wash. If Defendant's customers miss any payments, Defendant engages in unsolicited collection attempts through text message, harming thousands of consumers in the process.

6. Defendant, in the ordinary course of business, regularly, on behalf of itself or others, engages in "debt collection" as that term is defined by Cal. Civ. Code § 1788.2(b).

---
[1] Cal. Civ. Code §§ 1788.1 (a)-(b)

**COMPLAINT**  2  KAZEROUNI LAW GROUP
245 FISCHER AVE., SUITE D1
COSTA MESA, CA 92626

Accordingly, Defendant is a "debt collector," as that term is defined by Cal. Civ. Code § 1788.2(c) and a "creditor," as defined in Cal. Civ. Code § 1788(i).

7. Defendant is, and at all times mentioned herein was, a "person" as defined by Cal. Civ. Code § 1788.2(g) and is believed to have a principal place of business in Arizona.

8. Plaintiff is an individual residing in Modesto, California, and he is, and at all times mentioned was, a "person" as defined by 47 U.S.C. § 153(39) and Cal. Civ. Code § 1788.2(g). Additionally, Plaintiff is, and at all times mentioned was, a "debtor" as the term is defined in Cal. Civ. Code § 1788.2(h).

9. This matter involves a "consumer credit transaction" *i.e.*, a transaction between Plaintiff and Defendant (or its subsidiaries), in which property or money was acquired on credit primarily for personal, family, or household purposes. *See* Cal. Civ. Code § 1788.2(e).

10. Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiff also seeks statutory damages on behalf of himself and members of the Class, and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

11. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute, the TCPA. Moreover, jurisdiction is proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one class member belonging to a different state than that of Defendant. Plaintiff seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call that is in violation of the TCPA and up to $1,000 for each violation of the Rosenthal Act, which, when aggregated among a proposed class numbering in the thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court

jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

12. Jurisdiction is also proper because there exists a federal question based on the fact that Plaintiff's claims arise from the Telephone Consumer Protection Act, *47. U.S.C. § 227 et seq.* ("TCPA"), a federal statute.

**13.** Venue is proper in the United States District Court for the Eastern District of California pursuant to 28 U.S.C. § 1391(b)(2) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant provides and markets its services within the district, thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, Plaintiff resides within the State of California and has a California area code phone number to which the subject calls were made.

## PARTIES

14. Plaintiff is a natural person who, at all times relevant to this action, was a resident of Modesto, California.

15. Defendant is an Arizona corporation who conducts business in the Eastern District of California.

16. Plaintiff is informed and believes that Car Wash Partners, Inc. is the owner of Mister Car Wash.

## THE TCPA

17. The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system ("ATDS"); and (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

18. The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

19. In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

20. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

21. In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express ***written*** consent" for such calls to wireless numbers. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

22. To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of*

*1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

23. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

24. "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id*. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

25. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

26. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future. Id*.

27. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

28. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulaions Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

29. Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 2014 WL 6757978, at *3 (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of showing that it obtained Plaintiff's prior express consent before sending him the ***text message***). (emphasis added).

30. As recently held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

## **FACTS**

31. Sometime before July 11, 2021, Plaintiff purchased a monthly membership to a car wash service with Defendant. Plaintiff made monthly payments for the car wash service via automatic withdrawals from Plaintiff's debit card.

32. Subsequent to Plaintiff signing up for the service, but prior to July 11, 2021, Plaintiff's debit card used to make the payments to Defendant was stolen. As a result, Plaintiff reported the card stolen and it was cancelled.

33. Around the beginning of July 2021, Plaintiff started receiving emails from Defendant indicating that his payments were not being processed.

34. Just prior to July 6, 2021, Plaintiff was involved and injured in an accident as a passenger in an Uber ride.

35. On July 6, 2021 at **4:06am California Time**, Plaintiff received a text message from Defendant stating the following: "Your Unlimited Wash Club membership is no longer active." Plaintiff, like most people, was sleeping at 4:06am and the text message woke him up.

36. Then, on July 7, 2021 at **4:05am California Time**, Plaintiff received the same text message as the day before. Plaintiff was sleeping at 4:05am and the text message woke him up. Later that night, Plaintiff responded to Defendant's text message with "Stop".

37. In response to Plaintiff texting "Stop", Plaintiff received an immediate automatic text from Defendant that stated, "You are unsubscribed from MicrologicMemberAlerts. No more messages will be sent. Help at support@micrologic.net or 877-564-4276". The immediate response from Defendant containing generic messaging to Plaintiff indicates the use of an ATDS.

38. Shockingly, despite Defendant's representation that it would not contact Plaintiff, the very next day, July 8, 2021 at **4:07am California Time**, Plaintiff received another text from Defendant stating, "Your Unlimited Wash Club membership is no longer active."

39. Plaintiff received texts on July 9th, 10th, 11th, and 12th, 2021 all at approximately 4:00am in the morning and all repeating the same message, "Your Unlimited Wash Club membership is no longer active."

40. Plaintiff replied with a request to stop on July 7th, 9th, and 12th, 2021 to no avail.

41. The multiple text messages sent by Defendant to Plaintiff violate 15 U.S.C. §1692c(1), which is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17, because the text messages were sent before 9 o'clock postmeridian local time at Plaintiff's location.

42. Defendant's text messages constituted debt collection because Defendant was clearly attempting to collect money for Plaintiff's car membership.

43. Alternatively, Defendant's text messages constitute telemarketing because they encouraged the future purchase or investment in property, goods, or services, i.e., selling a dating service.

44. Plaintiff received the subject texts within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this district. Upon information and belief, Defendant caused other text messages to be sent to individuals residing within this judicial district.

45. At no point in time did Plaintiff provide Defendant with his express written consent to be contacted using an ATDS or a prerecorded text.

46. Plaintiff is the subscriber of the phone associated with the number that was messaged and is financially responsible.

47. The impersonal and generic nature of Defendant's text message, demonstrates that Defendant utilized an ATDS in transmitting the messages. *See Jenkins v. LL Atlanta, LLC*, No. 1:14-cv-2791-WSD, 2016 U.S. Dist. LEXIS 30051, at *11 (N.D. Ga. Mar. 9, 2016) ("These assertions, combined with the generic, impersonal nature of the text message advertisements and the use of a short code, support an inference that the text messages were sent using an ATDS.") (citing *Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1354 (S.D. Fla. 2014) (plaintiff alleged facts sufficient to infer text messages were sent using ATDS; use of a short code and volume of mass messaging alleged would be impractical without use of an ATDS); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) (finding it "plausible" that defendants used an ATDS where messages were advertisements written in an impersonal manner and sent from short code); *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1130; *Robbins v.*

*Coca-Cola Co.*, No. 13-CV-132-IEG NLS, 2013 U.S. Dist. LEXIS 72725, 2013 WL 2252646, at *3 (S.D. Cal. May 22, 2013) (observing that mass messaging would be impracticable without use of an ATDS)).

48. The text message originated from the telephone number 26379, a number which is owned and operated by Defendant.

49. Defendant's shocking unsolicited text messages caused Plaintiff actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's text messages also inconvenienced Plaintiff and caused disruption to his daily life.

50. Defendant's unsolicited text messages caused Plaintiff actual harm. Specifically, Plaintiff was woken up around 4:00am on seven separate mornings by these text messages.

51. Defendant's text messages also can slow cell phone performance by taking up space on the recipient phone's memory. *See* https://www.consumer.ftc.gov/articles/0350-text-message-spam#text (finding that spam text messages can slow cell phone performance by taking up phone memory space).

## CLASS ALLEGATIONS

52. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated

53. Plaintiff brings this case on behalf of a Classes defined as follows:

> **TCPA Revocation Class: All persons within the United States who received any text messages from Defendant to said person's cellular telephone made through the use of any automatic telephone dialing system or an artificial or prerecorded text and such person had previously revoked consent to receiving such calls within the four years prior to the filing of this Complaint.**

**Rosenthal Class**
**All persons within the United States who received any text messages from Defendant before 9 o'clock postmeridian, local time at the consumer's location to said person's telephone in an attempt to collect a debt within the one year prior to the filing of this Complaint.**

54. Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class but believes the Class members number in the several thousands, if not more.

**NUMEROSITY**

55. Upon information and belief, Defendant has placed automated and/or prerecorded calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

56. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

**COMMON QUESTIONS OF LAW AND FACT**

57. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

    i. Whether Defendant sent non-emergency messages to Plaintiff's and Class members' cellular telephones using an ATDS or prerecorded text message;

    ii. Whether Defendant can meet its burden of showing that it obtained prior express written consent to send such messages;

    iii. Whether Defendant's conduct was knowing and willful;

     iv. Whether Defendant is liable for damages, and the amount of such damages;

     v. Whether Defendant should be enjoined from such conduct in the future; and

     vi. Whether Defendant was attempting to collect a debt.

58. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits text messages to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**TYPICALITY**

59. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories regarding unsolicited text messages being sent by Defendant to Class members.

**PROTECTING THE INTERESTS OF THE CLASS MEMBERS**

60. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

**PROCEEDING VIA CLASS ACTIONS IS SUPERIOR AND ADVISABLE**

61. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own

separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

62. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I

### Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)

**(On behalf of Plaintiff and the Class)**

63. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

64. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

65. Defendant – or third parties directed by Defendant – used equipment having the capacity to dial numbers without human intervention to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class defined below.

66. These calls were made without regard to whether Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not have prior express consent to call the cell phones of Plaintiff and the other members of the putative Class when its calls were made.

67. Defendant has, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system and/or prerecorded text messages to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express written consent.

68. Defendant knew that it did not have prior express consent to make these calls, and knew or should have known that it was using equipment that at constituted an automatic telephone dialing system and/or prerecorded text message. The violations were therefore willful or knowing.

69. As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls. *Id*.

## COUNT II

### Violation of the TCPA, 47 U.S.C. § 227(b)(1)(C)

70. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

71. It is a violation of the TCPA "to use … [a] device to send … an unsolicited advertisement …." 47 U.S.C. § 227(b)(1)(C).

72. The term unsolicited advertisement means "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

73. Defendant sent Plaintiff and other Class members an unsolicited advertisement to renew membership or pay for a current membership to Defendant's car wash.

74. These messages were sent without Plaintiff or the other Class member's prior express consent.

75. Thus, Defendant has violated § 227(b)(1)(C) of the TCPA by using by sending unsolicited messages to Plaintiff and the other members of the putative Class without their prior express written consent.

76. As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls. *Id*.

## COUNT III

### Knowing and/or Willful Violation of the TCPA, 47 U.S.C. § 227(b)

**(On Behalf of Plaintiff and the Class)**

77. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

78. At all times relevant, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

79. Defendant knew that it did not have prior express consent to make these calls and knew or should have known that its conduct was a violation of the TCPA.

80. Because Defendant knew or should have known that Plaintiff and Class Members had not given prior express consent to receive its autodialed calls, the Court should treble the amount of statutory damages available to Plaintiff and the other members of the putative Class pursuant to § 227(b)(3) of the TCPA.

81. As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a

minimum of $1,500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls. *Id*.

## COUNT IV

**Violation of the RFDCPA, Cal. Civ. Code § 1788 et seq ("Rosenthal Act")**

**(On Behalf of Plaintiff and the Class)**

82. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

83. The foregoing acts and omissions constitute numerous and multiple violations of the RFDCPA.

84. As a result of each and every violation of the RFDCPA, Plaintiff and the Sub-Class are entitled to any actual damages pursuant to Cal. Civ. Code § 1788.30(a); statutory damages for a knowing or willful violation in the amount up to $1,000.00 pursuant to Cal. Civ. Code § 1788.30(b); and reasonable attorney's fees and costs pursuant to Cal. Civ. Code § 1788.30(c) from each Defendant individually.

## PRAYER FOR RELIEF

85. **WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

   a) An order certifying this case as a class action on behalf of the Class as defined above, and appointing Plaintiff as the representative of the Class and counsel as Class Counsel;

   b) An award of actual and statutory damages;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA and RFDCPA;

d) A declaratory judgement that Defendant's telephone calling equipment constitutes an automatic telephone dialing system under the TCPA;

e) A declaratory judgement that Defendant utilizes prerecorded text messages;

f) An injunction requiring Defendant to cease all unsolicited text messaging activity, and to otherwise protect the interest of the Class;

g) An injunction prohibiting Defendant from using, or contracting the use of, an automatic telephone dialing system without obtaining, recipient's consent to receive calls made with such equipment;

h) Attorneys fees and costs; and

i) Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff and Class Members hereby demand a trial by jury.

Dated: March 22, 2022          Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: /s/ Ryan L. McBride
Ryan L. McBride, Esq.
Attorney for Plaintiff and the Proposed Class